**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL NO. 3026 |
| | Master Docket No. 1:22 C 00071 |
| This Document Relates to: | Hon. Rebecca R. Pallmeyer |
| *Ashia George, et al., v. Children's National Medical Center, et al.* | |
| Case No. 1:22 C 05635 | |

**MEMORANDUM OPINION AND ORDER**

This medical-malpractice case concerns allegations that healthcare providers at Children's National Medical Center ("Children's National") negligently caused the death of A.G., the child of Plaintiff Ashia George.[1] Plaintiffs have sought leave [91] to file an amended complaint. For the reasons explained below, that motion is denied.

**DISCUSSION**

Plaintiffs filed their complaint in the U.S. District Court for the District of Columbia on October 28, 2020, alleging negligent medical practices at Children's National. Ms. George delivered twins prematurely on June 4, 2017. (Compl. [1] ¶¶ 9–10.) The infants were admitted to the Neonatal Intensive Care Unit, and fed George's breast milk. (*Id.* ¶ 13.) On July 10, 2017, the infants were "transitioned to a cow's milk-based fortifier or formula," and infant A.G. developed necrotizing enterocolitis ("NEC") shortly thereafter. (*Id.* ¶¶ 15, 18.) A.G. died on August 2, 2017. (*Id.* ¶ 36.)

After their tragic loss, Plaintiffs filed two separate actions: a products liability action against Abbott Laboratories, the manufacturer of the cow's milk-based product that A.G. consumed, and

---

[1] Plaintiff's name is listed as "Aisha George" on the docket, both parties refer to her as "Ashia George," and the complaint identifies Plaintiff as "Ashia George." The Clerk is directed to amend the docket to reflect the correct spelling of Ms. George's name.

a medical malpractice action against Children's National.  In her medical malpractice suit, George alleges that healthcare providers at the hospital acted negligently in feeding A.G. a cow's-milk-based product despite an alleged link between such products and NEC, and that they ignored the "warning signs" of the disease.  (*Id.* ¶¶ 16–21, 31.)  She claims that the providers' negligence was the proximate cause of A.G.'s death.  (*Id.* ¶ 44.)

Awaiting the decision of the Judicial Panel on Multidistrict Litigation ("JPML") regarding the consolidation and transfer of the products liability actions against Abbott and Mead Johnson, the parties jointly sought a limited stay pending the JPML's ruling.  (Consent Mot. to Stay [25].)  After the JPML established MDL No. 3026 on April 8, 2022, Children's National sought to bring this case into the MDL framework.  The case was transferred to this court by the JPML as a Tag-Along Action (Transfer Order [37]), and the case remained largely dormant within the MDL.  On September 30, 2024, Plaintiffs, purportedly in an effort to "move the case forward," voluntarily dismissed their products liability case against Abbott, and moved to transfer the medical malpractice case back to the District of Columbia shortly thereafter.  (Reply [99] at 4.)  In response, Children's National filed a third-party complaint naming Abbott and Mead Johnson as third-party defendants, creating a new basis to retain the case in this court.  (Third Party Compl. [57].)

Discovery has been ongoing.  In the early stages of this case, on October 26, 2022, Ms. George stated the following in a response to an interrogatory:

> I produced so much breast milk I was asked if I'd be interested in donating, *shortly after I was told all of my breast milk was spoiled due to something happening to the fridge.* The doctors then continued to push the HFM because they claimed the milk I was then producing was no longer enough and the twins were not growing fast enough even though nurses stated they were growing at a normal pace, hospitals just push the HFM so kids can be discharged faster.[2]

(Opp'n [98] at 3.)  Ms. George's deposition took place on October 3, 2025, nearly three years later.  During her testimony, George revealed that she had provided substantial donor milk to hospital officials, but that her milk later spoiled due to a malfunction in the hospital's refrigerators.

---

[2] It is not clear what the acronym "HFM" stands for in this quotation.

(Mem. [91-1] at 2–3.)  George further revealed that she was contacted at work and told that a resupply was necessary.  Ms. George struggled to produce milk, however, which "she attributed to stress about meeting the required supply." (*Id.* at 3.)  On February 2, 2026, Plaintiffs requested leave to amend their complaint to add allegations relating to the "negligent handling and storage" of her breast milk, a theory that was absent from her initial 2020 complaint.  (*Id.* at 3–4.)

This request is denied.  Federal Rule of Civil Procedure 15(a)(2) states that district courts should "freely" grant leave to amend a complaint when "justice so requires."  FED. R. CIV. P. 15(a)(2).  But courts may deny leave to amend if "the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002)).  The delay here is substantial and unjustified.  This case has now been pending for nearly six years, and the proposed amendment concerns facts that were known to Plaintiffs at the time of this case's inception.  Plaintiffs characterize their proposed amendment as being premised on "additional facts uncovered through the discovery process." (Mem. [91-1] at 5.)  But this is true only in the sense that the information Plaintiffs seek to include was disclosed by *Plaintiff George herself*, and was obviously known to Plaintiffs at the time this case was filed.  While Plaintiffs' *counsel* may have been unaware of those particular facts at the filing of the complaint, that is no reason to grant leave to amend, especially after six years of pendency during which further interviews with counsel's client could have revealed the very information Plaintiffs now seek to include.

The court concludes, further, that the resulting prejudice is substantial.  As Defendant points out, the original complaint focuses on medical negligence, not refrigerator malfunction or maintenance.  To allow amendment at this late stage would require Defendant to conduct an entirely new investigation into the facts of this case, involving records, witnesses, and evidence that might well no longer be available or even exist.  Plaintiffs acknowledge the possibility that the "documents most central to the new allegations" including "equipment maintenance logs,

3

temperature monitoring records, incident reports, repair records, and NICU policies governing breast milk storage" may no longer exist. But they argue that this possibility "does not establish prejudice attributable to Plaintiffs;" and instead "reflects risks inherent in CNMC's own document-retention practices." (Reply [99] at 11.) The court disagrees. Large institutions like Children's National generate significant amounts of data, and the costs of storing the relevant records indefinitely can be substantial. Without notice that the documents Plaintiffs describe should have been retained for the purposes of litigation—notice that could have come from a more timely amendment—Children's National would have had no reason to depart from standard data-management systems to retain refrigerator repair records.

## CONCLUSION

The motion for leave to amend [91] is denied.

ENTER:

Dated: July 21, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

4